**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kevin H.Q.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Civil File No. 26-03975 (MJD/SGE)

---

Benjamin Gleekel, Immigrant Law Center of Minnesota, Counsel for Petitioner.

David R. Hackworthy, Assistant United States Attorney, Counsel for Federal Respondents.

---

## I. INTRODUCTION

This matter is before the Court on Petitioner Kevin H.Q.'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is being detained in violation of the Fourth Amendment, the Fifth Amendment, and the INA. Respondents say Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

## II. FACTS[1]

### A. Petitioner's Life in the United States

Petitioner is a citizen of Guatemala and has resided in the United States more than 18 years after entering this country at the age of 15 without inspection

---

[1] Facts from the Petition not disputed are deemed admitted. See Paula G. v. Bondi, 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

on or around July 2008. (Doc. 1 ¶¶ 3, 15, 41-42.) Since at least 2010, Petitioner has lived in the Minneapolis area. (Doc. 1-2 at 18 (U visa appl.).) He was homeless in the Bloomington area when he was arrested by ICE. (Doc. 1 ¶ 15; Doc. 6 (Decl. Deport. Off. Benjamin Northwood) ¶ 8.)

Petitioner has a history of employment and financially supporting his ill parents and his siblings. (Doc. 1 ¶ 43; Doc. 1-2 at 36.) Petitioner has studied English at the Open Door Learning Center and has been active in the Mission Christiana Elim Church. (Doc. 1 ¶ 43; Doc. 1-2 at 37.)

In February 2020, Petitioner was issued a U visa after being the victim of a 2015 assault. (Doc. 1-2 at 56-57 (U visa), 3-51 (visa appl.).) The visa expired on February 5, 2024. (Doc. 1-2 at 57.) Following the assault, which included the perpetrator holding a gun to Petitioner's head, Petitioner experienced mental health and emotional issues. (Id. at 34-35; Doc. 1 ¶ 45.) A mental health professional diagnosed Petitioner with Posttraumatic Stress Disorder, Chronic and suggested that he receive ongoing treatment. (Doc. 1 ¶ 45; Doc. 1-2 at 39.)

**B. Petitioner's Criminal History**

Since 2020, Petitioner has had many encounters with law enforcement – mostly DWI and other traffic-related. (Doc. 1 ¶ 46; Doc. 7-2 (Doc. I-213) at 2-3.) He has been convicted of traffic-related crimes twice and received sentences of

fewer than 3 months local confinement. (Doc. 7-2 at 2 (June 2021 arrest with March 2025 conviction of DWI—78 days local confinement), 3 (Oct. 2024 conviction for careless driving—35 days local confinement).) Six DWI or reckless driving offenses between August 2021 and November 2025 all appear to remain pending. (Id. at 3.) In 2020, Petitioner was arrested for motor vehicle theft but the arrest is without disposition. (Id. at 2.) A 2021 charge of possession of a controlled substance was dismissed. (Id. at 3.)

More recently, Petitioner was arrested several times between August 2024 and May 2026 for trespassing. (Id.) All these charges were dismissed after Petitioner was found incompetent. (Id.) Likewise, November 2025 charges of public indecency and damage to property were dismissed based on a finding of incompetency. (Id.)

### C. Petitioner's June 5, 2026 Arrest

On May 21, 2026, DHS flagged Petitioner, who was incarcerated in the Hennepin County Jail after a trespassing arrest. (Id. at 2; Doc. 1 ¶ 49.) Petitioner was released at some point after this time. (Doc. 1 ¶ 49.) However, ICE arrested Petitioner on the afternoon of June 5, 2026 at the Richardson Nature Center in Bloomington, MN after a Fish and Wildlife officer encountered him. (Id. ¶ 50.) ICE used an I-200 warrant to effectuate the arrest. (Doc. 10 at 3; Doc. 7 (I-200 &

Cert. of Serv.).) The warrant had been issued on May 21, 2026. (Doc. 7.) ICE issued an NTA on June 5, 2026. (Doc. 7-1 at 1.) Petitioner was initially taken to Fort Snelling and was transported the Sherburne County Jail later in the day. (Doc. 1 ¶¶ 52-53.)

Petitioner remains in the Sherburne County Jail where he has expressed suicidal ideation and been placed on suicide watch. (Id. ¶ 57; Doc. 1-2 at 79-184.) He has been in administrative segregation since at least July 1 for what appears to be a "[Mental health]/Behavior concern." (Doc. 1-2 at 189.) A September 8, 2026 Sherburne County Segregation Review stated that Petitioner does not pose a threat to himself, others, property, or security and that he is not defiant toward staff. (Id.) Petitioner's behavior is not "of a type which may provoke or instigate stressful/violent situations if housed in general population." (Id.)

### D. Petitioner's June 22, 2026 Immigration Hearing

On June 22, 2026, Petitioner appeared before an immigration judge who found Petitioner "mentally incompetent to represent himself." (Id. at 186.) The immigration judge ordered the Executive Office for Immigration Review's National Qualified Representative Program to provide qualified representation for Petitioner. (Id.) Counsel from the Immigrant Law Center of Minnesota has been appointed counsel for Petitioner.

## III. DISCUSSION

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (holding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States") (citing U.S. Const., Art. I, § 9, cl. 2)). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. "But once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is "lawful, unlawful, temporary, or permanent." Id. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. Petitioner bears the burden to prove detention contrary to law by a preponderance of the

evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. Effect of Avila v. Bondi on Petitioner's Claims**

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A), as confirmed by the Eighth Circuit in Avila v. Bondi,170 F.4th 1128 (8th Cir. 2026). (Doc. 5 at 1-2, 4-5, 8.)

While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on § 1225, Avila does not foreclose constitutional or statutory claims not raised in that case. The Court therefore turns to Petitioner's constitutional arguments.

**C. Fifth Amendment Due Process**

Petitioner applies the Mathews v. Eldridge balancing test to argue that his continued detention violates his constitutional due process rights guaranteed by the Fifth Amendment. 424 U.S. 319 (1976).

Respondents, however, contend that Petitioner does not challenge "the adequacy of the procedures for determining whether Petitioner is an 'applicant for admission,' . . . . Instead, Petitioner argues that the determination that [he] is an applicant for admission and 'not clearly and beyond a doubt entitled to be admitted,' 8 U.S.C. § 1225(b)(2)(A), is a constitutionally insufficient basis on

which to justify the deprivation of liberty. Petitioner's due process argument is substantive, not procedural, in nature." (Doc. 5 at 5-6.) Respondents argue that even if the Court applies the Mathews factors, Petitioner is still not entitled to the "additional process" of a bond hearing. (Id. at 9.)

The Parties dispute whether Petitioner is being detained pursuant to 8 U.S.C. § 1226(a) or § 1225(b)(2). However, even assuming, without deciding, that Petitioner is subject to § 1225(b)(2), he is still entitled to a bond hearing because he has been denied his Fifth Amendment due process rights.

**1. Petitioner's Due Process Protections**

Petitioner is entitled to due process under the Fifth Amendment. The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. As discussed above, the United States Supreme Court has made clear that the Due Process Clause applies to all "persons" within the United States, including noncitizens whose presence here is not lawful. Zadvydas, 533 U.S. at 693; Wong Wing v. United States, 163 U.S. 228, 238 (1896) (holding that the provisions of the due process clause are "universal in the application to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or nationality").

### 2. Procedural vs. Substantive Due Process

As discussed above, Respondents argue that Petitioner's entire due process claim should be classified as substantive, rather than procedural. However, Petitioner argues that the essence of procedural due process is the opportunity to be heard, something that is denied noncitizens detained under 8 U.S.C. § 1225(b)(2), and that procedural due process protects noncitizens against deprivations of their liberty without adequate notice and the meaningful opportunity to be heard. (Doc. 1 ¶¶ 9, 37, 87 (citations omitted).)

This is a challenge to the procedures used to deprive Petitioner of his liberty. Thus, "without an individual assessment, the risk of erroneous deprivation is high." Pedro A.D.L.O.O. v. Bondi, Civil No. 26-1959 (DWF/DJF), 2026 WL 948970, at *3 (D. Minn. Apr. 8, 2026). Mathews is the correct vehicle to determine whether Petitioner has suffered a due process violation. See, e.g., Selvin Adonay E.M. v. Noem, 817 F. Supp. 3d. 720, 733–35 (D. Minn. 2025) (applying the Mathews test to noncitizen's due process claim in a habeas petition); Maldonado v. Olson, 795 F. Supp. 3d 1134, 1148 (D. Minn. 2025) (using Mathews test for Fifth Amend. due process challenge); Salvador F.B. v. Brott, Civ. Case No. 26-3817 (MJD/SGE), Docket No. 11, slip op. at 8-14 (D. Minn. Sept.

14, 2026) (applying Mathews test to proc. due process claim). Petitioner's procedural due process challenge is properly raised.

### 3. The Mathews v. Eldridge Balancing Test

To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

#### a) The First Mathews Factor

Respondents claim that the first factor, Petitioner's private interest, "though significant in the abstract, is limited by the detention posture Congress assigned to applicants for admission . . . Petitioner is not a lawfully admitted noncitizen challenging discretionary detention after lawful entry; he is detained under a statutory framework Congress made mandatory." (Doc. 5 at 9-10 (citing DHS v. Thuraissigiam, 591 U.S. 103, 139-40 (2020)).) The Court finds that Thuraissigiam does not limit Petitioner's private interest. In Thuraissigiam, a noncitizen was detained for expedited removal pursuant to 8 U.S.C. § 1225 immediately after crossing the border. 591 U.S. at 114. The Court held that a

noncitizen in his position is not entitled to a bond hearing because he "has only those rights regarding admission that Congress has provided by statute." Id. at 140.

Thuraissigiam is easily distinguishable on the facts because the petitioner "was apprehended 25 yards from the border and was thereafter continuously detained." Manuel G. v. Blanche, No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *4 (D. Minn. May 7, 2026) (emphasis added). Moreover, the factual predicate for Thuraissigiam "merely reinforces [the] longstanding understanding that noncitizens on the threshold of initial entry stand on a different footing than those who have passed through our gates." Lopez-Campos v. Raycraft,175 F.4th 713, 733 (6th Cir. 2026) (citation omitted) (cleaned up). Because Petitioner has been living in the country for about 18 years, Thuraissigiam does not limit his private interest under the Mathews balancing test. Moreover, because he had been granted a U visa in 2020, Petitioner was at least somewhat known to Respondents, unlike the petitioner in Thuraissigiam who was not known because he barely made it across the border. The first factor weighs in Petitioner's favor, especially here where Petitioner has been held in segregation, arguably the most restrictive setting available, since at least July 1, 2026.

**b) The Second Mathews Factor**

The second Mathews factor requires the Court to consider the risk of an erroneous deprivation of Petitioner's liberty as well as "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." Selvin, 817 F. Supp. 3d at 734 (citing Mathews, 424 U.S. at 335). While detention during removal proceedings is "constitutionally permissible, . . . the government's authority to detain noncitizens is not limitless and should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." Jesus Alejandro G. A. v. Blanche, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (citing Demore v. Kim, 538 U.S. 510, 531 (2003); Zadvydas, 533 U.S. at 690).

Respondents argue that "the risk of erroneous deprivation is low because detention under § 1225 turns on objective statutory predicates—most importantly whether Petitioner is an applicant for admission and whether the applicable subsection of § 1225 governs his custody." (Doc. 5 at 10.) Respondents contend that "the due process clause 'does not require the opportunity to prove a fact that is not material to the [government's] statutory scheme.'" (Id. (quoting

Connecticut Dep't Pub. Safety v. Doe, 538 U.S. 1, 4 (2003) (brackets in original).) They assert that "[a]dditional procedures aimed at discretionary factors would add little here, "where Congress did not make them material to detention under § 1225" and that unless Petitioner can "show that the substantive rule of law was defective (by conflicting with the Constitution), any hearing on current dangerousness would be a bootless exercise." (Id. at 10, 7 (quoting Conn. Dep't Pub. Safety, 538 U.S. at 8) (cleaned up).)

Respondents do not specifically address whether detention is necessary to ensure Petitioner's appearance at his immigration proceedings or to prevent danger to the community. Furthermore, Connecticut Dep't Public Safety, wherein the plaintiff challenged the statutory requirement that he register as a sex offender, can be distinguished because here, Petitioner does not challenge § 1225(b)(2) "in isolation, but Respondents' arbitrary decision to invoke 8 U.S.C. § 1225(b) . . . as part of a retroactive justification" after its I-200 administrative warrant authorized initial detention under § 1226(a). (Doc. 10 at 13 (citing Sergio R.V.-P. v. Mullin, No. 26-cv-2361 (NEB/ECW), 2026 WL 1727869, at *4 n.4 (D. Minn. May 29, 2026) (stating that "[the] Government may not simply toggle between the detention regimes set forth in §§ 1225 and 1226 as they are not . . .

interchangeable sources of detention authority") (citation omitted), R&R adopted, 2026 WL 1725810 (D. Minn. June 15, 2026).)

In short, the Court disagrees with Respondents. A bond hearing where both parties have an opportunity to be heard will allow the immigration judge ("IJ") to decide whether Petitioner's detention is, in fact, necessary to ensure his presence at future immigration proceedings and that he does not pose a danger to his community. Petitioner has lived in the United States for 18 years and during that time, assisted law enforcement in solving a crime. He attends church and therefore has at least some community attachments. The Sherburne County Jail staff has declared that he is not a danger. Continuous detention without an opportunity to be heard, especially under his current conditions, does not fulfill the promise of Zadvydas that every person in this country is entitled to due process of law. 533 U.S. at 693; see also Pedro A.D.L.O.O., 2026 WL 948970 at *3. Without an individual hearing, the risk of erroneous deprivation of Petitioner's liberty is too great. The second Mathews factor weighs in favor of Petitioner.

**c) The Third Mathews Factor**

The third Mathews factor requires the Court to consider the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Mathews, 424 U.S. at 335; Idle H. v. Bondi, No. 26-CV-315 (LMP/SGE), 2026 WL 266462, at *7 (D. Minn. Feb. 2, 2026) (citing Hernandez-Lara v. Lyons, 10 F.4th 19, 33 (1st Cir. 2021) (citing Velasco Lopez v. Decker, 978 F.3d 842, 854 n.11 (2d Cir. 2020)) (explaining that the third Mathews factor favors saving the Government "from expending substantial resources on needless detention"). Unnecessary detention also "imposes substantial societal costs, such as reduced economic contributions and tax payments by detained immigrants," not to mention the separation of individuals from their families and communities. Vega v. Arnott, No. 6:26-CV-3097-MDH, 2026 WL 482906, at *6 (W.D. Mo. Feb. 20, 2026).

Respondents assert that "Congress has a strong interest in the uniform administration of the immigration laws, in ensuring the availability of applicants for admission during removal proceedings, and in avoiding the administrative burdens of grafting onto § 1225 a Mathews analysis Congress did not create. The Supreme Court has repeatedly recognized the strength of those governmental interests in the immigration context." (Doc. 5 at 10-11 (citing Demore, 538 U.S. at 523).) Respondents argue that the "Eighth Circuit has made clear that courts are not to impose an extra-statutory reasonableness or balancing overlay onto mandatory immigration detention regimes where Congress has already made

the operative judgment." (Id. at 11 (citing Banyee v. Garland, 115 F.4th 928, 931-33 (8th Cir. 2024)).)

While the Court acknowledges that the government has a substantial interest in even administration of the law, such "interest[] [is] not subverted by requiring the minimal procedural safeguard of a bond hearing." Manuel G., 2026 WL 1256358, at *5. The Court also notes that "other Courts of Appeals have reached the opposite conclusion from the Eighth Circuit in Avila . . . [meaning] Respondents are, therefore, already required to routinely offer bond hearings to people in identical circumstances [to Petitioner] and requiring them to do so for [Petitioner] will not significantly change that landscape." Julio Victor R.R. v. Blanche, No. 26-cv-2853 (KMM/DJF), 2026 WL 2517137, at *8 (D. Minn. Aug. 26, 2026) (collecting cases) (internal citations omitted).

In addition, Respondents' citation to Banyee to support their argument that Petitioner has no procedural due process right to a bond hearing under 8 U.S.C. § 1225(b) is misplaced. This Court has previously found the broad due process pronouncements in Banyee "cabined to the statutory and factual context in which they arose," which was a detention under 8 U.S.C. § 1226(c). See Orlando R.V.V. v. Blanche, Civ. No. 26-1903, Docket No. 11, slip op. at 10 (D. Minn. Apr. 28, 2026). Likewise, to the extent Respondents rely on Demore to

argue that Petitioner is not entitled to a bond hearing, "the better reading of Demore is that noncitizens are generally entitled to an individualized finding of danger and risk of flight." Felipe S.P. v. Blanche, Civil No. 26-2212 (NEB/DJF), Docket No. 18, slip op. at 10 (D. Minn. July 2, 2026).

**D. Remedy**

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (quotation omitted). All the Mathews factors weigh in favor of Petitioner. Therefore, even if mandatory detention pursuant to § 1225(b)(2)(A) applies to Petitioner, his detention violates his right to procedural due process. The appropriate remedy for this constitutional deprivation is to provide him with an opportunity to be heard at a bond hearing before an immigration judge.

Resolution of this issue renders discussion of Petitioner's other arguments unnecessary. See Faysal N. v. Noem, 825 F. Supp. 3d 844, 849 n.3 (D. Minn. Jan. 6, 2026) (when the court's decision on one of petitioner's arguments meant the petitioner's detention was unlawful, the court need not reach other arguments).

## III. ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART as follows:**

1. Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

2. Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling[2];

3. The Immigration Judge is prohibited from denying the opportunity for a bond hearing based on a purported lack of jurisdiction;

4. If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

    a. Release Petitioner into Minnesota;

    b. At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

    c. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

5. If a bond hearing does not take place within one week, Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in ¶ 4;

---

[2] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration law attorney to represent Petitioner at the hearing.

6. Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

7. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 1, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court